United States District Court
Southern District of Texas
ENTERED

OCT 3 0 2008

Michael N. Milby, Clerk of Court
By Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# -BROWNSVILLE DIVISION-

|  |  |  |
|---|---|---|
| ARTURO MONTEMAYOR, | § | |
| Plaintiff, | § | |
|  | § | |
| VS. | § | CIVIL ACTION NO. B-07-CV-151 |
|  | § | |
| HEARTLAND TRANSPORTATION, | § | |
| INC., | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before this Court are two Motions for Summary Judgment by Defendant

Heartland Transportation, Inc. ("Heartland"): Defendant's Motion for Partial Summary Judgment

(Doc. No. 36), which concerns Plaintiff's gross negligence claims, and Defendant's Motion for

Partial Summary Judgment on Spoliation Issues (Doc. No. 38). After careful consideration of

Defendant's Motions, Plaintiff's Responses, and Defendant's Replies, the Court hereby DENIES

both Motions.

## Background[1]

At approximately 3:30 a.m. on May 6, 2006, a tractor-trailer driven by Walter Wilcoxon

("Wilcoxon") collided with a parked tractor-trailer at a truck stop near Huntsville, Texas.

Plaintiff Arturo Montemayor ("Montemayor") was sleeping in the parked tractor-trailer when the

collision occurred and alleges he suffered extensive injuries as a result of the collision. Prior to

---

[1]Since the defendant is moving for summary judgment, the Court recounts the evidence favorably to Plaintiff as the summary judgment non-movant and draws all reasonable inferences in Plaintiff's favor. *See Clift v. Clift,* 210 F.3d 268, 270 (5th Cir. 2000).

his employment with Heartland, Wilcoxon had been involved in one wreck and had received at least 13 traffic citations.  From November 2005 to May 3, 2006, while an employee at Heartland, Wilcoxon was involved in three more wrecks.  Sometime after the May 3rd wreck, but before the May 6th collision with Plaintiff, Lisa Nissen, Heartland's safety director, decided to fire Wilcoxon.  Nissen ordered the dispatcher to have Wilcoxon get an additional load, deliver it, and return to headquarters.  Shortly thereafter, on May 6th, Wilcoxon collided with Plaintiff while delivering this "last" load.  On May 9th, Wilcoxon returned to Heartland's headquarters and was fired.

On October 1, 2007, Plaintiff filed the instant lawsuit.  In his Original Complaint, Plaintiff brought action against Heartland under "general negligence and negligent entrustment theories," alleging that Defendant "was negligent in improperly qualifying, training, and/or supervising its driver, and in entrusting its vehicle to him." (Doc. No. 1 at 4).  On August 22, 2008, Plaintiff filed for leave to amend the Original Complaint to add new theories of liability, including gross negligence, and a claim for exemplary damages based on testimony and documents from the deposition of Lisa Nissen.  (Doc. No. 32-1).  At the same deposition, Plaintiff apparently learned that Defendant had destroyed or lost a variety of potentially relevant documents, and so sought to add spoliation allegations as well.  (*Id.*)  This Court granted Plaintiff leave to amend, and Defendant filed its Motions for Partial Summary Judgment on the gross negligence and spoliation issues shortly thereafter.  (Doc. Nos. 36, 38).  We address each Motion in turn.

**Defendant's Motion for Partial Summary Judgment (Doc. No. 36)**

In his First Amended Complaint, Plaintiff alleges that "Defendant Heartland Transportation, Inc. was negligent and *grossly negligent in hiring, qualifying, supervising, and retaining* Wilcoxon as a driver." (Doc. No. 32-2 at 8) (emphasis added).  In its Motion for Partial Summary Judgment, Defendant asks this Court to "grant summary judgment on [Plaintiff's] gross negligence *claim*." (Doc. No. 36 at 2) (emphasis added).  At one point, Defendant contends that "[t]he evidence does not, however, show that Wilcoxon was such an incompetent driver that Heartland was *grossly negligent in retaining him*." (*Id.* at 6) (emphasis added).  Defendant also anticipates that Plaintiff "could contend that Heartland is liable for gross negligence through a theory of negligent entrustment." (*Id.* at 7).  The Court finds no language in Defendant's Motion or Reply specifically addressing gross negligence in hiring, qualifying, or supervising Wilcoxon.  Thus, it is not clear whether Defendant understands the First Amended Complaint to allege a single gross negligence claim, or whether Defendant instead simply addresses its Motion to the claim of gross negligence in retaining Wilcoxon or, alternatively, in entrusting him with one of its trucks.

The matter is complicated by the fact that Plaintiff never actually pleads *gross* negligence based upon the theory of negligent entrustment.  Plaintiff does mention entrustment in his First Amended Complaint, but solely in the facts section: "Defendant was negligent in hiring and qualifying Wilcoxon, and in entrusting a vehicle to him, due to Wilcoxon's driving record (as well as his driving record and at-fault wrecks while he worked for Defendant)." (Doc. No. 32-2 at 5).  Plaintiff does not include any language concerning entrustment of any kind in his causes-of-action section.  Nonetheless, in his Response brief, Plaintiff implies that he is making such a

claim.  (Doc. No. 40 at 14) ("In cases of grossly negligent entrustment, the plaintiff must show . . . .).

Under the general rule that "an amended complaint ordinarily supersedes the original and renders it of no legal effect," *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985), this Court considers Plaintiff to be alleging the three separate gross negligence claims mentioned in the causes-of-action section of his First Amended Complaint, i.e. one each for hiring, supervising, and retaining Wilcoxon as a driver.[2]  Since Defendant in its Motion for Partial Summary Judgment only specifically refers to gross negligent retention, we will interpret Defendant's Motion as addressing only Plaintiff's claim of gross negligence in retaining Wilcoxon.

## I.    Summary Judgment Standard

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The nonmoving party must go beyond the pleadings and provide specific facts showing that there is a genuine issue for trial.  *Id.* at 56(e)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material

---

[2]The Court also notes, without deciding, that to the extent that Plaintiff only mentions negligent entrustment in the facts section of his First Amended Complaint, and not in the causes-of-action section, Plaintiff arguably dropped his claim for negligent entrustment entirely.

fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 255.

However, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Id.* Under Texas law, gross negligence must be proved by clear and convincing evidence. *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 234 n.2 (Tex. 2004). Where the "'clear and convincing' evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant." *Id.* The clear and convincing evidence requirement "requires that plaintiff adduce evidence that is sufficient to make the existence of facts highly probable, not merely evidence that is sufficient to make the existence of fact more probable than not, as required by the preponderance standard." *Perez Librado v. M.S. Carriers, Inc.*, No. Civ.A.3:02-CV-2095-D, 2004 WL 1490304, at *2 (N.D. Tex. June 30, 2004) (internal quotation and citation omitted).

## II.     Discussion

**Statutory framework.**     Plaintiff brings his gross negligence claim(s) in the context of a claim for exemplary damages. (*See* Doc. No. 40 at 14). A plaintiff may recover exemplary damages only if he or she "proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a). "Clear and convincing" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 41.001(2).

For the purposes of a claim for exemplary damages, "gross negligence" means an act or omission:

> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
> (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

*Id.* § 41.001(11).

This definition consists of two tests, an objective test and a subjective test, both of which must be satisfied to sustain a claim for gross negligence. *TXI Transp. Co. v. Hughes*, 224 S.W.3d 870, 918 (Tex.App.–Ft. Worth 2007, pet. granted). The objective test requires that the act or omission involves "an extreme degree of risk," which has been held to mean "not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Dillard Dept. Stores, Inc. v. Silva*, 148 S.W.3d 370, 374 (Tex. 2004) (internal quotation omitted). The subjective test requires that "defendant knew about the peril, but his acts or omissions demonstrate that he did not care." *Diamond Shamrock Ref. Co., L.P. v. Hall*, 168 S.W.3d 164, 171–72 (Tex. 2005) (internal quotation and footnote omitted). Circumstantial evidence is sufficient to prove either test. *Perez Librado v. M.S. Carriers, Inc.*, No. Civ.A.3:02-CV-2095-D, 2004 WL 1490304, at *2 (N.D. Tex. June 30, 2004); *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998).

**Arguments of the Parties.**    Defendant urges this Court to grant summary judgment on Plaintiff's gross negligence claim for reasons that essentially track the requirements of the statute's objective and subjective tests for gross negligence:

>First, although Wilcoxon's driving record included prior citations and traffic
>violations, his continued employment for Heartland did not pose an extreme risk
>of serious bodily injury to fellow motorists.  Second, Heartland did not act with
>conscious indifference to the rights, safety, and welfare of motorists.

(Doc. No. 36 at 2).

Regarding the objective test, Defendant contends that the evidence detailing Mr.

Wilcoxon's driving history does not show that Heartland knew Mr. Wilcoxon would, "in all

probability, severely injure another driver." (Doc. No. 36 at 6).  Defendant advances essentially

three reasons in support of this contention.  First, although Nissen stated that she decided to

terminate Wilcoxon because there were circumstances in his recent driving record that she found

"unacceptable," none of Wilcoxon's three wrecks during his employment at Heartland "involved

fatalities or significant injuries." (*Id.* at 5).  Second, Nissen testified that she never had reason to

suspect that Wilcoxon drank alcohol or used drugs while he was driving for Heartland. (*Id.*).

Third, "Nissen never determined that Wilcoxon exercised extreme carelessness while he worked

for Heartland," and "although Wilcoxon's driving record was imperfect, his previous employer

said it would again allow him to drive tractor-trailers." *Id.*; *id.* at 5 n.1.

Regarding the subjective test, Defendant contends that the evidence shows that Heartland

did care about and scrutinize Wilcoxon's driving record, and that before the collision with

Plaintiff occurred, Heartland "took measures to protect drivers like Mr. Montemayor by deciding

to end Wilcoxon's employment." *Id.* at 6.  Finally, since none of the wrecks in which Wilcoxon

had been involved as a Heartland driver involved significant injuries to people or property,

"Heartland could not have been subjectively aware that Wilcoxon's continued employment posed

a severe threat of bodily injury to motorists like Mr. Montemayor." *Id.*

Plaintiff's Response to Defendant's Motion takes two approaches to meeting his burden as non-movant. Plaintiff first contends generally that his summary judgment evidence is sufficient on its face to raise fact issues on both the objective and subjective statutory tests for gross negligence. Regarding the objective test, Plaintiff cites the evidence of Wilcoxon's driving history, and Heartland's knowledge of that history, avers that "[a]llowing an incompetent or reckless driver to operate an eighteen-wheeler is extremely dangerous," and concludes that since a "driver with at least 13 prior traffic convictions and four wrecks is incompetent . . . Defendant's decision to allow such a driver to operate a tractor-trailer, objectively, involved an extreme degree of risk that he would be involved in another wreck." (Doc. No. 40 at 14–15). Regarding the subjective test, Plaintiff notes that Defendant was aware of Wilcoxon's prior traffic convictions and wrecks, was aware of a DDEC report showing habitual speeding, and was aware that Wilcoxon had falsified information on his application, including misrepresentation of his prior violations. *Id.* at 15. Further, it was precisely because of this driving history that Lisa Nissen had determined that Wilcoxon was "an unsafe driver" and should be terminated. *Id.* Despite this determination, Defendant nonetheless dispatched him to deliver another load "even after subjectively determining that Wilcoxon was such an unsafe driver that he should be fired." *Id.*

Plaintiff then turns to the case law on negligent entrustment in particular and concludes that "Texas courts have affirmed gross negligence findings with far less evidence than what is present in this case." *Id.* Plaintiff discusses four cases in which courts of appeal affirmed jury findings of gross negligence against companies who employed as drivers individuals having

8

various combinations of prior wrecks, speeding tickets, DWI's, and other traffic violations on their records.[3] *Id.*

These cases are inapposite for two reasons. First, as discussed *supra*, Plaintiff has not pled gross negligent entrustment in his most recent pleading. Nonetheless, given the particular facts of this case, claims for gross negligent retention and gross negligent entrustment would have similar factual support, and so these entrustment cases could provide the Court with some guidance. However, as Defendant notes in his Reply brief, each of the cases Plaintiff cites predates the Texas Legislature's 2003 amendments to Chapter 41 of the Texas Civil Practice and Remedies Code, and one could certainly conclude that since these amendments heightened the requirements for proving a gross negligence claim, cases applying the weaker standard are less instructive.

Finally, in its Reply to Plaintiff's Response brief, Defendant cites a recent case in which a Texas appellate court held that the defendant's decision to retain a driver who failed to comply with the requirements of the Federal Motor Carrier Safety Regulations did not constitute gross negligence. *Id.*[4]

---

[3]Plaintiff also urges the Court to grant Montemayor the benefit of an adverse inference based on spoliation. (Doc. No. 40 at 16–18). As the Court concludes that Plaintiff's summary judgment evidence is sufficient on its own to meet Plaintiff's burden, we do not address this argument.

[4]Defendant also urges the Court to disregard the affidavit and curriculum vitae of one of Plaintiff's designated experts, which Plaintiff attached to his Response brief, on the ground that both of these documents are hearsay and that the probative value of these documents is outweighed by their prejudicial effect. (Doc. No. 41 at 5). The Court declines this request, as the Federal Rules specifically contemplate the use of affidavits at this stage: summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Nonetheless, since the Court finds that the other evidence cited by the non-movant suffices to meet his summary-judgment burden, we need not rely on the materials to which Defendant objects.

**Analysis.**     The issue presented by Defendant's Motion for Partial Summary Judgment (Doc. No. 38) is whether this Court should find as a matter of law that Plaintiff has failed to produce evidence sufficient to meet his summary-judgment burden on his claim of gross negligence. Taking into account the statutory definition of gross negligence as consisting of both an objective and a subjective test, as well as the requirement that Plaintiff prove gross negligence by the standard of clear and convincing evidence, the Court's determination thus turns on whether Plaintiff has adduced evidence sufficient to make "highly probable" the existence of facts tending to show that Defendant's actions meet both the objective and subjective tests.

The Court holds that Plaintiff has adduced sufficient evidence concerning both tests. A jury could find by clear and convincing evidence that, viewed objectively from Heartland's standpoint, the decision of Lisa Nissen to retain Wilcoxon as a driver despite the evidence of his driving record involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. A jury could similarly find that Nissen had actual, subjective awareness of the risk involved, but nevertheless proceeded in conscious indifference to the rights, safety, or welfare of others.

Defendant contends that Wilcoxon's driving record does not suggest he would "in all probability, severely injure another driver" because: (1) none of his prior wrecks involved fatalities or significant injuries; (2) Nissen had no reason to suspect that Wilcoxon used drugs or alcohol while driving for Heartland; and (3) Nissen never determined that Wilcoxon had exercised extreme carelessness.   These contentions are unpersuasive and are ordinarily not conclusive. A jury could find that a driver with three wrecks in less than six months is careless and/or accident prone.   The fact that these accidents may have been relatively minor is not

reassuring; common sense suggests that often only the most infinitesimal of contingencies separate a minor accident from a becoming a major one.[5]  Further, although a driver's use of alcohol or drugs while driving does make accidents more probable, his non-use does not thereby make him a safe driver.  Again, common sense and experience suggest that many thoroughly sober drivers are dangerous nonetheless.  Similarly, exercising extreme carelessness is not the only way to be a danger on the road.  Regardless of whether he had been adjudged extremely careless by Nissen, the fact remains that Wilcoxon had been involved in three wrecks in less than six months and had accumulated numerous traffic convictions in recent years.  Indeed, Defendant admits in its own brief that the reason for Heartland's decision to end Wilcoxon's employment "is quite evident: *Heartland does not want unsafe drivers on the road.*"  (Doc. 36 at 6) (emphasis added).   The evidence of Wilcoxon's past wrecks alone is sufficient basis upon which a jury could find it highly probable that "when viewed objectively" from the standpoint of Heartland, retaining Wilcoxon to carry one more load involved "an extreme degree of risk" of "serious injury" to others, including Plaintiff.  Heartland's knowledge of his numerous traffic citations and frequent speeding only makes such a conclusion more plausible.  Plaintiff has met his burden concerning the objective test.

Heartland contends that Plaintiff fails to show Nissen's actions meet the subjective test because "the record shows that Heartland cared about, and scrutinized" Wilcoxon's driving record."  (Doc. No. 36 at 6).  Indeed, as a result of this care and scrutiny, "Nissen took measures to protect drivers like Mr. Montemayor by deciding to end Wilcoxon's employment." (*Id.*).  Not,

---

[5]Expert testimony has suggested this, as well.  *See Shell Oil Co. v. Sutton*, No. 01-88-00146-CV, 1989 WL 1179, at * 4 (Tex.App.–Houston [1st Dist.] Jan. 12, 1989).

however, before dispatching him with one more load.  The following exchange is taken from

Nissen's deposition:

> Attorney:    If you determined [Wilcoxon] wasn't a safe enough driver to continue
>
> working for your company, why would you have him do one more load?
>
> Nissen:    I don't know.
>
> Attorney:    Were you aware that having him do another load after you'd already–he
>
> already had enough wrecks where you thought he wasn't a driver that
>
> should be driving for your company would expose the people he was
>
> around during that last load to danger?
>
> Nissen:    Yes [objections by counsel] I don't know.

(Deposition of Lisa Nissen at 65).  This exchange, combined with the other evidence indicating

Heartland's knowledge of Wilcoxon's driving history, is a sufficient basis upon which a jury

could find it highly probable that Heartland had "actual subjective awareness of the risk

involved," but nevertheless proceeded with "conscious indifference to the rights, safety, or

welfare of others."  Plaintiff has met his burden concerning the subjective test.

Finally, the one post-2003-amendments case Defendant cites does not suggest that

Plaintiff's facts are insufficient to meet his burden.  The court in *TXI Transp. Co. v. Hughes* held

that evidence an employer hired and retained a driver with less driving experience than he had

represented and who was not in compliance with Federal Motor Carrier Safety Regulations

("FMCSR") licensing requirements did not suffice, alone, to prove the employer's gross

negligence.  *See* 224 S.W.3d 870, 919 (Tex.App.–Ft. Worth 2007, pet. granted).  "To the

contrary," the court noted, "TXI offered evidence that [the driver] did not have a negative driving

history and that he ultimately satisfied the driving-related criteria necessary to obtain a Texas commercial driver's license." *Id.* at 920.

Mr. Montemayor does not allege or rely on facts pertaining to Wilcoxon's experience or lack of a proper license to prove Heartland's gross negligence. Instead, Plaintiff offers evidence that Wilcoxon not only had a "negative driving history," but that Heartland knew of this history, decided to fire him as a result of it, but nonetheless retained him for one more assignment. These facts distinguish *TXI Transp. Co.* from the instant case.

For these reasons, the Court finds that Plaintiff Montemayor has met his summary-judgment burden on the claim of gross negligence in retaining Mr. Wilcoxon and so DENIES Defendant's Motion for Partial Summary Judgment.


**Defendant's Motion for Partial Summary Judgment on Spoliation Issues (Doc. No. 38)**

In his First Amended Complaint, Plaintiff alleges that in violation of its duty to preserve evidence in anticipation of litigation, "Defendant destroyed or lost many pieces of important evidence." (Doc. No. 32-2 at 6). Plaintiff further contends that "the Court should either render judgment on the liability issues (including negligence and gross negligence) or give the jury an adverse instruction based on this spoliation," (*Id.* at 8). Defendant has responded to Plaintiff's allegations by moving for partial summary judgment on spoliation issues. Defendant asks the Court to rule as a matter of law that Heartland did not lose or destroy any of the relevant documents in bad faith and, for this reason, dismiss Plaintiff's spoliation claims. (Doc. No. 38 at 5).

I.     **Summary Judgment Standard**

Summary Judgment is appropriate if the "pleadings, the discovery and disclosure

materials on file, and any affidavits, show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A court

must be satisfied that no reasonable trier of fact could find for the non-moving party. *Lavespere*

*v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).  The non-moving party's

burden is not satisfied by creating some "metaphysical doubt" as to the material facts or by

providing only conclusory allegations, unsubstantiated assertions, or a scintilla of evidence.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  A court will resolve factual

controversies in favor of the non-moving party "only when there is an actual controversy, that is,

when both parties have submitted evidence of contradictory facts." *Id.*

II.    **Discussion**

**The Spoliation of Evidence Doctrine**     Plaintiff bases this Court's jurisdiction over his claims

on diversity of the parties.  (Doc. No. 32-2 at 1).  Federal law controls evidentiary issues in

diversity matters. *See King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003).  Thus,

federal law determines whether sanctions should be imposed against Heartland for alleged

spoliation of evidence. *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir.

2005); *King*, 337 F.3d at 556.

The spoliation doctrine concerns the intentional destruction of evidence. *Lafayette Ins.*

*Co. v. CMA Dishmachines*, No. Civ.A. 03-1098, 2005 WL 1038495, at *3 (E.D. La. Apr. 26,

2005).  If a party intentionally destroys evidence, the trial court may exercise its discretion to

impose sanctions on the responsible party.  *Id.*  The seriousness of the sanctions that a court may impose depends on:

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by other[s] in the future.

*Id.* (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3rd Cir. 1994)).

Before a court may consider imposing sanctions, "the party having control over the evidence must have had an obligation to preserve it at the time it was destroyed." *Id.* (internal citation omitted).  Such a duty "arises when the party has notice that the evidence is relevant to litigation." *Id.* (internal citation omitted).  The Fifth Circuit "requires the party who seeks sanctions to show that the party who allegedly spoiled the evidence acted in bad faith." *Id.*; *King*, 337 F.3d at 556.  Nonetheless, the mere fact that documents are destroyed after the initiation of litigation is not enough to automatically draw an inference of bad faith.  *Russell v. University of Texas of Permian Basin*, 234 Fed. Appx. 195, 208 (5th Cir. 2007).  Thus, mere "negligence is not enough, for it does not sustain an inference of consciousness of a bad case." *Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975).  Instead, "the circumstances of the act must manifest bad faith." *Id.*

**Arguments of the Parties.**      Plaintiff alleges that Heartland "destroyed or lost" the following pieces of evidence:

(1) The drug and alcohol folder for Wilcoxon;

(2) Wilcoxon's log books;

(3) Audits of Wilcoxon's logs and hours of service;

15

(4) Reports from J.J. Keller regarding Wilcoxon's logs and any violations of the hours-of-service rules;

(5) Data and reports from the DDEC system;

(6) GPS data.

(Doc. No. 32-2 at 6–7).

Regarding the drug and alcohol folder, Defendant states that these documents have been recently produced, which Plaintiff does not deny. (*Id.* at 6 (citing Defendant's Objections and Responses to Plaintiff's Second Request for Production at 3)). Thus, the issue of spoliation is moot as to these documents.

Regarding Wilcoxon's log books, the audits of Wilcoxon's log books, and the J.J. Keller reports and audits of Wilcoxon's log books, Heartland contends that it destroyed these documents six months after the collision with Plaintiff occurred as part of its "normal procedures" and policy. (*Id.* at 6–7). Heartland also emphasizes that in her deposition, Lisa Nissen specifically testified that she did not anticipate litigation would arise from the May 6, 2006 collision. (*Id.* at 6). Since Plaintiff did not file suit until October 1, 2007, almost 17 months after the collision, Heartland contends that it had no notice of impending litigation prior to its routinized destruction of these documents sometime in late 2006. (*See id.*).

Regarding the DDEC data, which indicate how many miles are on a tractor-trailer, how much fuel has been consumed, and how fast the driver has driven the tractor-trailer, Nissen testified that Heartland's policy is to keep this data "for the entire length of the equipment." (Deposition of Lisa Nissen at 79). She further testified that Heartland no longer owns the vehicle Wilcoxon drove on May 6, 2006, and has not retained its DDEC data, but she could not say when

16

the vehicle was sold. (*Id.* at 89). Heartland seems to imply, without explicitly stating, that "for the length of the equipment" actually means "for as long as Heartland owns the equipment." Thus, Defendant contends, Heartland destroyed the DDEC data according to its policy, and since Plaintiff has not produced any evidence that Heartland disposed of the tractor-trailer to impede discovery, there is no basis for Plaintiff's spoliation allegation. (Doc. No. 38 at 8). Finally, regarding the GPS data, Heartland contends that it cannot be responsible for producing this information because it does not retain GPS data, Heartland's vendor does. (*Id.*).[6]

In his Response to Defendant's Motion, Plaintiff alleges that Heartland anticipated litigation as early as a day after the wreck, and that Heartland did not follow its own policies when it destroyed the documents at issue. Plaintiff points to an interrogatory response in which Heartland stated that it anticipated litigation on May 7, 2006, one day after the wreck. (Doc. No. 42 at 2). Plaintiff argues that even if Lisa Nissen testified that she personally did not anticipate litigation after the May 6 collision, Heartland's interrogatory response indicates that the company did. (*Id.* at 2 n.1).

Plaintiff also points to deposition testimony in which Nissen states that Heartland's policy is to retain log documents after a collision "if we are advised to," i.e. "if there is a reason to do it," such as "bodily injury, if there was a tow, if there was a fatality, if a citation was issued, to promote any of those . . . ." (*Id.* at 3 (quoting Deposition of Lisa Nissen at 24)). In this case,

---

[6]Certainly, if this is accurate, Plaintiff can obtain these records directly from the vendor.

Plaintiff contends, there was in fact bodily injury, and so Heartland's destruction of the log information violated its own policy.[7] (*Id.*).

Regarding the DDEC data, Plaintiff argues that Defendant has not explained why it has been able to produce reports for the dates both immediately before and immediately after the May 6 collision, but cannot produce the report covering the time in between, i.e. the date of the wreck with Plaintiff. (*Id.* at 6). "The fact that Defendant later sold the tractor unit does not explain the document's disappearance because Defendant produced a report for a subsequent time period, meaning that the missing DDEC report was downloaded before the tractor was sold." (*Id.*). Moreover, "Defendant also cannot point to a policy of discarding DDEC reports after a fixed time; in fact, it was able to produce DDEC reports that were older than the missing document." (*Id.* at 6–7).

For these reasons, Plaintiff urges the Court to deny Defendant's Motion.

**Analysis.**     Defendant does not dispute that it intentionally destroyed or lost at least some of the evidence in question. (See Doc. No. 38 at 5–8). The issue presented is therefore whether Plaintiff has adduced evidence creating a genuine issue of material fact as to whether, at the time the evidence was destroyed or lost: (1) Heartland was on notice that the evidence would be relevant to litigation and so had an obligation to preserve the evidence; and (2) Heartland acted in

---

[7]Plaintiff also asks the Court to consider the affidavit of his trucking expert, which states that the manner and timing of Heartland's destruction of the documents at issue violated industry custom. (Doc. No. 42 at 4–5). Defendant urges the Court to ignore this affidavit as hearsay. (Doc. No. 43 at 2). Although the Court believes the affidavit appropriate for consideration at this stage, *see supra* note 4, to the extent that the Court finds Plaintiff's other evidence sufficient to meet his burden, we do not need to rely on the evidence to which Defendant objects.

bad faith when it destroyed or lost the documents. The Court holds that Plaintiff has met this burden.

Heartland contends in its briefing that it never anticipated the present litigation. Lisa Nissen has testified that she personally never anticipated litigation. Nonetheless, Defendant stated in a sworn interrogatory that it anticipated litigation one day after the collision with Plaintiff. Heartland acknowledges this fact in its Motion but points out that because Nissen denied anticipating any litigation in her deposition, Heartland will amend its "discovery responses accordingly." (Doc. No. 38 at 7 n.6).

Given Heartland's original interrogatory response, Plaintiff has created more than a "metaphysical doubt" about whether one or more Heartland employees anticipated litigation prior to the destruction or loss of the evidence in question. Heartland has not disputed that the evidence could be relevant to litigation, and Plaintiff argues plausibly that it is. (*See* Doc. No. 42 at 5). By this, of course, the Court does not mean to suggest that the evidence as it stands is sufficient to justify an inference that Heartland was on notice of potential litigation. Nonetheless, the Court views this question as one about which there is a genuine issue of material fact and so prefers to postpone its decision until after the close of discovery.

Plaintiff has also met his burden on the issue of whether Heartland acted in bad faith when it destroyed or lost the evidence in question. Regarding the various log reports and audits, Nissen testified in her deposition that Heartland typically retains these sorts of documents when one of its drivers is involved in a wreck in which there was "bodily injury." It is as yet unclear whether Heartland knew at this time that Plaintiff was alleging various injuries. It is also unclear precisely what policies Heartland normally practices in situations like Wilcoxon's wreck with

19

Plaintiff. To the extent that Nissen's testimony suggests the possibility that Heartland was not following its normal procedures when it destroyed the log documents after six months, the Court cannot decide as a matter of law that Heartland acted in good faith.

Similarly, there is a genuine issue of material fact as to why Heartland has not produced the DDEC report covering May 6, 2008. Defendant has offered no explanation of why it produced the DDEC reports for the periods before March 4, 2006, and after May 6, 2006, but cannot produce the report covering the day of Wilcoxon's collision with Plaintiff. Nor is it clear what, precisely, Heartland's policy is concerning retention of DDEC data. Given this situation, the Court cannot conclude as a matter of law that Heartland did not act in bad faith if and when it lost or destroyed these records.

Finally, the Fifth Circuit has specifically stated that while "we do not automatically draw an inference of bad faith simply because documents are destroyed after the initiation of litigation," it is nonetheless relevant to a spoliation claim if documents are destroyed after the defendant "has notice of their relevance" to Plaintiff's claim. *Russell v. University of Texas of Permian Basin*, 234 Fed. Appx. 195, 208 (5th Cir. 2007). Heartland contends in its Reply brief that this statement is "at best dicta," since the court actually held that the district court did not abuse its discretion in denying a spoliation charge. (Doc. No. 43 at 1–2).

While it is true that the language in question is not necessary to that court's holding, this does not make the language irrelevant as a guide to applying the spoliation doctrine in the Fifth Circuit. More importantly, Defendant cites no authority, and the Court has found none, suggesting that facts such as those alleged by Plaintiff, when supported by some evidence, are

insufficient to avoid summary judgment, especially when factual controversies are to be resolved in favor of the non-movant.

For these reasons, the Court finds that Plaintiff Montemayor has presented enough summary-judgment evidence to keep alive the issue of spoliation and so DENIES Defendant's Motion for Partial Summary Judgment on Spoliation Issues.

The Court hereby DENIES Defendant's Motion for Partial Summary Judgment (Doc. No. 36) and Defendant's Motion for Partial Summary Judgment on Spoliation Issues (Doc. No. 38).

Signed this 30th day of October 2008.

Andrew S. Hanen
United States District Judge